**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SUSAN BRENNER, et al., | ) | CASE NO. 5:16-cv-1117 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| LM GENERAL INSURANCE | ) | **AND ORDER** |
| COMPANY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is defendant's motion for partial summary judgment. (Doc. No. 33 ["Mot."].) Plaintiffs have filed an opposition brief (Doc. No. 34 [Opp'n"], improperly styled as a reply), and defendant filed a reply (Doc. No. 38 ["Reply"]). For the reasons set forth herein, the motion is granted in part and denied in part.

**I. BACKGROUND**

This case was removed by defendant from the Stark County Court of Common Pleas. On May 17, 2016, plaintiffs filed their first amended complaint, having been directed to do so by the Court. (Doc. No. 8 ["FAC"].) The claims arise out of injuries plaintiff Susan Brenner ("Mrs. Brenner") sustained in an automobile accident. The FAC alleges six causes of action: (1) breach of contract, alleging that defendant owes money under plaintiffs' underinsured motorist coverage ("UIM"); (2) breach of fiduciary duty; (3) bad faith; (4) willful interference with a protected property interest; (5) loss of consortium as to plaintiff Scott Brenner; and (6) loss of consortium as to plaintiffs' minor daughter. Defendant is seeking summary judgment on the second, third, and fourth claims only.

There is no dispute that, at all relevant times, plaintiffs had an insurance policy provided by defendant that provided UIM coverage in a maximum amount of $250,000 per person and

$500,000 per occurrence, plus $5,000 for medical payments coverage. (*Id*. ¶¶ 2, 3, and Ex. A[1];
Doc. No. 9 ["Answer"] ¶ 2, 3.)

Plaintiff Susan Brenner ("Mrs. Brenner") was involved in an automobile accident on
October 29, 2012. There is no dispute that the accident was caused by Kayla Uminski, who was
driving negligently. (FAC ¶ 4; Mot. at 310.) Plaintiffs allege that Mrs. Brenner sustained serious
and permanent personal injuries, experienced pain and suffering that will continue into the future,
incurred (and will continue to incur) expenses for care and treatment of her injuries, incurred wage
loss, and has suffered impairment of her ability to live and enjoy a normal, healthy life. (FAC ¶ 5.)

After plaintiffs' counsel notified defendant in October 2013 that the negligent driver's
insurance company had tendered its insured's policy limits of $12,500 to resolve all claims,
defendant provided notice that it would waive its right to subrogation and permit plaintiffs to settle
with and release the tortfeasor. (Doc. No. 33-1 (Affidavit of Jessica Dickens) ["Dickens Aff."] ¶¶
2, 3.)[2]

According to defendant, in January 2014, it began to regularly contact plaintiffs' counsel,
by both phone and letter, attempting to determine if plaintiffs had settled with Ms. Uminski and
requesting an update. (*Id.* ¶ 4.) Over five months later, and after approximately nine attempts by
Ms. Dickens to contact plaintiffs' counsel,[3] plaintiffs formally demanded payment from Liberty
Mutual under the UIM provisions of plaintiffs' automobile policy. (*Id.* ¶ 5.) Plaintiffs assert that

---

[1] Ex. A to the FAC consists of the policy's declarations page. The full policy was attached to the original complaint.
(*See* Doc. No. 1-3 beginning at 31 (all page number references herein are to the page identification number generated
by the Court's electronic docketing system).)

[2] Jessica Dickens is a Bodily Injury Claims Specialist with Liberty Mutual Insurance Company. (Dickens Aff. ¶ 1.)

[3] In their opposition brief, plaintiffs concede that their counsel did not respond to defendant's inquiries because "[Mrs.
Brenner] was receiving ongoing medical treatment during this period and there was no reason for Plaintiffs' counsel
to communicate with Defendant's adjuster during that time." (Opp'n at 326.) The Court disagrees; at the very least,
counsel should have responded as a courtesy to inform the adjuster of the alleged ongoing treatment.

this demand included medical bills in the amount of $23,506.02 (subsequently updated to $27,998.17), plus lost wages in the amount of $8,701.44, for a total of $32,207.46 in "specials." (Opp'n at 326, 327.)

In the following months, defendant evaluated the claim and requested additional medical records, which it received on July 23, 2014. (Dickens Aff. ¶ 6.) One month later, on August 27, 2014, Liberty Mutual offered $25,343.37 to settle Mrs. Brenner's UIM claim, plus $5,000 in medical payments benefits. (*Id.* ¶ 8.) Combined with the settlement payment from Ms. Uminski's insurer, this would have totaled $42,843.37. (*Id.* ¶ 9.)

In making its settlement offer, Liberty Mutual claims to have reviewed police reports and witness statements about the accident, Mrs. Brenner's medical records and bills, Mrs. Brenner's treating physician's report regarding treatment and the likelihood of future treatment, and documentation from Mrs. Brenner's employer (Aultman Health Foundation) regarding lost wages. (*Id.* ¶ 10.) At the time of defendant's offer, Mrs. Brenner had $27,998.17 in medical bills, some of which had been paid by Aultcare, and lost wages of $8,701.44 over 33 days. (*Id.* ¶¶ 11, 12.) No counter-demand was ever provided by plaintiffs. (*Id.* ¶ 14.)

Plaintiffs filed suit in state court on April 20, 2016, and the case was thereafter removed to this Court on the basis of diversity. In their amended complaint, plaintiffs seek $300,000 in compensatory damages and $1,000,000 in punitive damages.

## II. DISCUSSION

### A.      Summary Judgment Standard

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The motion must be granted if the non-moving party

who has the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element that is essential to that party's case[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Summary judgment must be denied if there are genuine issues of material fact for resolution by a trier of fact. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

**B.      Analysis**

**1.      Claim Two (Breach of Fiduciary Duty)**

In claim two, plaintiffs allege that defendant, having a duty to pay benefits under the UIM policy, held such benefits "for the sole benefit and use of Plaintiffs, thereby creating a fiduciary relationship" that defendant breached by failing to pay the UIM benefits. (FAC ¶ 12.) In its motion, defendant asserts entitlement to judgment on this claim due to its failure as a matter of law, since no Ohio law suggests that the claim handling relationship between an insured and his insurer is a fiduciary relationship. (Mot. at 312-13, citing cases.)

Plaintiffs' opposition completely fails to address this claim. In its reply, defendant argues that this amounts to abandonment of the claim and entitles defendant to judgment. (Reply at 344.) But, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). By the same token, plaintiffs cannot preserve a non-meritorious claim simply by refusing or declining response to legal arguments against the claim.

The breach of fiduciary duty claim, as pleaded in the FAC, is no more than a contract claim in tort clothing. Plaintiffs allege that, when they made a claim under their insurance contract, that claim "gave rise to Defendant's duty to pay benefits . . . thereby creating a fiduciary relationship between Defendant LM General and Plaintiffs." (FAC ¶ 12.) When defendant failed to offer the amount of benefits that plaintiffs expected, they claim it "breached its fiduciary duty to [them.]" (*Id.* ¶ 13.)

In Ohio, "tort actions are generally unavailable in breach of contract cases no matter how willful or malicious the breach[.]" *Schachner v. Blue Cross and Blue Shield of Ohio*, 77 F.3d 889, 897 (6th Cir. 1996) (citing *Ketcham v. Miller*, 136 N.E. 145, 146 (Ohio 1922)). Defendant already had a duty, by virtue of the insurance contract, to pay benefits. Plaintiffs are really only disputing the *amount* of the benefits defendant offered. In view of their contract claim, there is no separate fiduciary duty claim, because there is no duty separate from the contract duty.

That said, every contract includes an inherent duty to act in good faith. Under Ohio law, plaintiffs may assert a tort claim against an insurer for a bad faith refusal to pay a claim. *Gallo v. Westfield Nat'l Ins. Co.*, No. 91893, 2009 WL 625522, at *3 (Ohio Ct. App. March 12, 2009) (an insurer's fiduciary duty to act in good faith in handling an insured's claim "exists in the context of [the] insurance contract[]") (citations omitted). Plaintiffs have asserted a separate bad faith claim, discussed below. They cannot duplicate either their contract claim or their bad faith claim by asserting a separate tort of breach of fiduciary duty. Plaintiffs offer no argument to the contrary, simply not addressing this claim in their opposition.

The Court concludes that defendant is entitled to judgment as a matter of law on claim two of the first amended complaint.

2. **Claim Three (Breach of Duty of Good Faith)**

In claim three, plaintiffs assert that as a result of defendant's "willful, malicious and bad faith refusal to pay Plaintiffs the benefits to which Plaintiffs are entitled under the terms of the insurance policy, Plaintiffs have suffered and will continue to suffer great mental and emotional anguish and humiliation[.]" (FAC ¶ 15.)

Defendant asserts entitlement to judgment on this bad faith claim because "a disagreement about the value of a claim does not generate a genuine issue of material fact as to bad faith." (Mot. at 314, quoting *Clark v. Pekin Ins. Co.*, No. 3:15CV2272, 2016 WL 3126215, at *6 (N.D. Ohio June 3, 2016) and *Schreiber v. State Farm Ins. Co.*, 494 F. Supp. 2d 758, 769 (S.D. Ohio 2007), both citing *Eagle Am. Ins. Co. v. Frencho*, 675 N.E.2d 1312, 1319 (Ohio Ct. App. 1996).)

In opposition, plaintiffs assert that this claim is more than a simple dispute about the value of their claim and defendant's offer. Rather, they argue that defendant failed to exercise good faith because its offer on the claim was "'not predicated upon circumstances that furnish reasonable justification therefor.'" (Opp'n at 329, quoting *Jay v. Mass. Cas. Ins. Co.*, Nos. 2006CA00201, 2006CA00229, 2007CA00243, 2008 WL 555440, at *12 (Ohio Ct. App. Feb. 27, 2008) (citing *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397 (Ohio 1994), syllabus ¶ 1).) Plaintiffs argue that there is a genuine issue of material fact in that regard.

In particular, plaintiffs argue that defendant's offer of $25,343.37 (based on medical specials of $27,998.17 and lost wages of $8,701.44), when coupled with the $12,500 provided by the tortfeasor, "offer[ed] [Mrs. Brenner] a grand total of $1,144 for her pain, suffering, inconvenience and a life time of residual pain, suffering and disability." (Opp'n at 327.)[4] And this

---

[4] Plaintiffs object to defendant's adding in of the $5,000 medical payments benefits, which they argue is their entitlement under the policy, having nothing to do with their UIM claim. (Opp'n at 327.)

was despite defendant's adjuster's acknowledgment in her log notes that the case was well documented, that the course of treatment was conservative, and that Mrs. Brennen was a well-educated, credible witness, whose injuries were interfering with her job duties as a surgical assistant, which entailed standing, and would result in a moderate degree of disability. (*Id.*, citing Doc. Nos. 34-1 and 34-2.) Plaintiffs further assert that, during the course of this litigation, when Mrs. Brenner was deposed,[5] defendant learned that her medical treatments are ongoing, that she was terminated from her job at Aultman as a direct result of having to leave work for medical treatment, that she was unemployed for six months before obtaining a new job at a lower hourly wage. (*Id.* at 328-29.)

In reply, defendant concedes that "an insurer can theoretically act in bad faith even if it does not outright deny a claim." (Reply at 345.) But it argues that, "based on the information available at the time, Liberty Mutual offered Plaintiff well in excess of her claimed economic damages." (*Id.*) Defendant also argues that plaintiffs' claims that Mrs. Brenner's damages have risen since the initial offer are unsubstantiated by any support permitted under Rule 56. (*Id.* at 345-46.) In addition, defendant asserts that there have been additional offers of settlement during the course of mediation that occurred in 2016.

Although defendant is correct that plaintiffs' opposition brief offers no support for any increased damages (at least for purposes of a summary judgment motion[6]), the Court concludes that there is still a material factual dispute regarding whether defendant's offer was reasonable in light of the information defendant already had at that time. The question of reasonableness is

---

[5] Plaintiffs have not supplied a copy of this deposition or the relevant pages to support these factual assertions.

[6] The Court takes no position at this time as to whether defendant had any continuing duty to increase its settlement offer if, as plaintiffs claim, Mrs. Brenner's deposition testimony indicated that the original offer may have been too low, given her developing circumstances.

inherently fact-sensitive and "should normally be reserved for the jury 'unless there is only one reasonable determination possible' based on the evidence produced by the parties." *Snyder v. Kohl's Dep't Stores, Inc.*, 580 F. App'x 458, 462 (6th Cir. 2014) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (further citations omitted)).

While it appears that defendant diligently tried to pursue resolution, repeatedly contacting plaintiffs' counsel and ultimately having to wait for a lengthy period for any response, and, while it also appears that defendant decided the claim promptly (within one month) following its receipt of the relevant records, plaintiffs take issue with what they perceive as only $1,144.00 in payment of pain and suffering, and defendant has shed no light on the basis of its offer in consideration of this argument.[7]

Therefore, although this may turn out to be no more than a dispute regarding valuation, which, as pointed out by *Clark, supra*, would be insufficient on its own to establish a material factual dispute with respect to bad faith, the Court declines to grant judgment as a matter of law, given the record presented.

### 3. Claim Four (Interference with Protected Property Interests)

In claim four, plaintiffs allege that they had "protected property interests" in their insurance benefits because they "were relying on the financial assistance from the benefits as promised in the policy of insurance[,]" and that defendant "intentionally and willfully interfered with such protected property interests of Plaintiffs by denying the benefits due Plaintiffs" under their UIM policy. (FAC ¶ 17.)

---

[7] The Court has treated plaintiffs' response generously regarding this claim. With nothing more than an unspecified reference to defendant's "own adjuster's log notes[,]" (Opp'n at 331), plaintiffs make the conclusory assertion that "[d]efendant readily acknowledged the permanency and legitimacy of [p]laintiff's injuries" (*id.*), and yet awarded a paltry sum for pain and suffering. But those logs are of limited assistance to a lay reader of insurance logs since they contain numerous unexplained and undefined abbreviations, that may or may not shed light on defendant's reasoning.

Defendant seeks judgment on this claim, arguing that there are no protected property interests here. (Mot. at 317, citing, among authority, *Cleveland Constr., Inc. v. Ohio Dep't of Admin. Servs.*, 700 N.E.2d 54, 69 (Ohio Ct. App. 1997) ("Clearly, contracts with *state* entities may give rise to a property right which is protected under the Fourteenth Amendment. However, not every contract gives rise to a protected property interest.") (emphasis added).)

As with claim two, plaintiff's opposition fails to respond to this argument. Nonetheless, as noted above, on summary judgment defendant must still meet its initial burden; judgment cannot be premised on a mere failure to respond or oppose. *See Carver*, *supra*.

Notably, the complaint makes no mention of the Fourteenth Amendment; defendant has generously construed claim four as arguably falling within that amendment's ambit. But "[p]roperty interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" *Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 566 F. App'x 462, 466 (6th Cir. 2014) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (further citation omitted)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Furthermore, even if there were property interests involved, the Fourteenth Amendment only prohibits any *state*, not a private person or company, from depriving an individual of such an interest.

As with claim two, plaintiffs are simply attempting to formulate a separate tort claim out of their underlying claim of breach of the insurance contract. This effort fails and defendant is entitled to judgment as a matter of law on claim four.

### III. CONCLUSION

For the reasons set forth herein, defendant's motion for partial summary judgment (Doc. No. 33) is **granted** as to claims two and four and **denied** as to claim three. The case shall proceed only as to the first, third, fifth and sixth claims.


**IT IS SO ORDERED**.

Dated: July 5, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**